IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| OTIS BROWN | ) | |
| | ) | |
| v. | ) | No. 3:13-1293 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
|     Acting Commissioner of | ) | |
|     Social Security | ) | |

To: The Honorable Aleta A. Trauger, District Judge

## REPORT AND RECOMMENDATION

The plaintiff filed this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying the plaintiff's claim for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"), as provided by the Social Security Act.

Upon review of the Administrative Record as a whole, the Court finds that the Commissioner's determination that the plaintiff is not disabled under the Act is not supported by substantial evidence in the record as required by 42 U.S.C. § 405(g), and that the plaintiff's motion for judgment on the administrative record (Docket Entry No. 12) should be GRANTED to the extent that the case should be REMANDED.

### I. INTRODUCTION

On March 19, 2010, the plaintiff protectively filed for SSI and DIB, alleging a disability onset date of September 16, 2009, due to arthritis in his back, shoulders, knees, and feet. (Tr. 12, 118-28, 146.) His applications were denied initially and upon reconsideration. (Tr. 12, 66-71, 73-78.) On

July 10, 2012, the plaintiff appeared and testified at a hearing before Administrative Law Judge Elizabeth Neuhoff ("ALJ") (tr. 27-56), and the ALJ entered an unfavorable decision on July 18, 2012. (Tr. 12-22.) On September 23, 2013, the Appeals Council denied the plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3.)

## II. BACKGROUND

The plaintiff was born on April 19, 1959, and he was 50 years old as of his alleged disability onset date. (Tr. 141.) He graduated high school, attended college but did not graduate, and has worked as a material handler in a factory. (Tr. 46, 52, 157-58.) He served in the United States Army, and the Department of Veterans Affairs ("VA") has awarded him service-connected disability benefits. (Tr. 46-47, 366.)

### A. Chronological Background: Procedural Developments and Medical Records

The plaintiff received the majority of his medical care at VA hospitals and clinics, where he was treated for problems related to his back, shoulders, knees, and feet. (Tr. 188-256, 267-484.) The plaintiff frequently complained of back pain and stiffness (tr. 205-06, 219, 224-25, 418, 429, 434, 461, 465, 479), and an x-ray of his lumbar spine in January 2010 showed "mild diffuse degenerative disc disease." (Tr. 197.) He also frequently complained of pain and stiffness in his elbows and shoulders. (Tr. 219, 224-25, 229, 244-47, 250, 326-27, 431, 439, 451, 479-80.) April 2009 bilateral shoulder x-rays were normal (tr. 198-99), and a January 2011 MRI of the left shoulder showed normal joint spaces and cartilage, an intact AC joint, and "no significant joint effusion" but was

2

"suggestive of biceps tendinopathy without evidence of focal tear." (Tr. 353-54.) A June 2012 x-ray showed minor degenerative changes in the right shoulder. (Tr. 475.)

Additionally, the plaintiff has a history of left knee pain. (Tr. 204-06, 225, 244-49, 324, 417-20, 423-25, 429.) An April 2009 x-ray showed "[m]oderate osteoarthritic change involving the medial compartment." (Tr. 199-200.) In October 2009, he was given a left medial unloader brace, which provided "immediate relief when ambulating," and he was prescribed a cane in December 2011. (Tr. 206, 226, 312, 378.) He also has a history of bilateral foot pain, stiffness, and occasional numbness due to flat feet. (Tr. 208-09, 237-39, 289-95.) An April 2009 x-ray showed "[m]inor bilateral pes planus deformity and bilateral hallux valgus deformity."[1] (Tr. 198.) An x-ray taken in January 2012 did not show a pes planus deformity but showed a "minimal" hallux valgus deformity on the left side that had not changed since April 2009. (Tr. 352.) The plaintiff has been treated with orthotics and reported in June 2012 that orthotics had "improved" his foot pain. (Tr. 208-09, 290-91, 480.)

On September 7, 2010, Dr. A. Przybyla, a nonexamining Tennessee Disability Determination Services ("DDS") consultative physician, completed a physical Residual Functional Capacity ("RFC") assessment. (Tr. 258-65.) Dr. Przybyla opined that the plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk about six hours in an eight-hour workday, sit about six hours in an eight-hour workday, and push and/or pull in unlimited

---

[1] Pes planus means flatfoot and hallux valgus is an "angulation of the great toe away from the midline of the body, or toward the other toes." Dorland's Illustrated Medical Dictionary 811, 1410 (30th Ed.).

3

amounts. (Tr. 259.) Dr. Przybyla also opined that the plaintiff could frequently balance and occasionally climb, stoop, kneel, crouch, and crawl.[2] (Tr. 260.)

On July 20, 2011, Jacklen Robinson, a Family Nurse Practitioner with the VA, performed a Compensation and Pension ("C&P") examination of the plaintiff for his knee and shoulder impairments. (Tr. 417-24.) The plaintiff reported that his knee and shoulder pain had gotten "[p]rogessively worse," and it was noted that he was able to stand for 15-30 minutes and walk a quarter of a mile.[3] (Tr. 417-18.) Ms. Robinson observed that the plaintiff walked with a limping gait and had knee crepitus, guarding of movement, and pain with active motion in both knees. (Tr. 418-20.) The plaintiff also demonstrated guarding of movement, popping, and pain upon active motion bilaterally in his shoulders. (Tr. 419-20.) Ms. Robinson diagnosed the plaintiff with degenerative joint disease of the left knee and bilateral shoulder strain. (Tr. 423.) She opined that the plaintiff's shoulder and knee impairments had "[s]ignificant [e]ffects" on his occupational activities as evidenced by "[d]ecreased mobility, [d]ecreased manual dexterity, [p]roblems with lifting and carrying, [l]ack of stamina[,] . . . [w]eakness or fatigue, [and] [d]ecreased strength [in his] upper extremity." *Id.*

On January 4, 2012, the plaintiff underwent a second C&P examination with Ms. Robinson related to his foot impairment. (Tr. 289-95.) Ms. Robinson noted that the plaintiff had pes planus and hallux deformity bilaterally with pain that was worse upon use and manipulation. (Tr. 289-92.) He had extreme tenderness of the plantar surfaces of both feet, and Ms. Robinson noted that his

---

[2] On February 11, 2011, Dr. James Millis, a nonexamining DDS consultative physician, "affirmed" Dr. Przybyla's assessment. (Tr. 266.)

[3] It is not clear whether these functional limitations were provided by the plaintiff or reflect Ms. Robinson's opinions.

4

symptoms were not relieved by orthotics. (Tr. 291-92.) She also noted that the plaintiff regularly used a cane and that his "feet hurt when he stands more than 45 minutes." (Tr. 293, 295.)

The plaintiff's medical records indicate that the VA has awarded him service-connected disability benefits due to the following physical impairments: limited motion of arm (20% impairment); limited motion of arm (20% impairment); flat foot condition (10% impairment); and traumatic arthritis (10% impairment). (Tr. 366, 378.)

### B. Hearing Testimony

At the hearing on July 10, 2012, the plaintiff was represented by counsel, and the plaintiff and Lisa Courtney, a vocational expert ("VE"), testified. (Tr. 27-56.) The plaintiff testified that he graduated from high school and took college courses before joining the military. (Tr. 46.) He said that he left the military, in part, because he "couldn't do the physical requirements that they wanted [him] to do." (Tr. 51-52.) He testified that he draws benefits from the VA due to his feet, knee, and shoulder impairments. (Tr. 46-47.) The plaintiff testified that he last worked in 2009 when he was laid off. (Tr. 33-34.) He said that he also had difficulty keeping up with the pace of the job. *Id.* He explained that he attempted to find another job but did not believe he was able to perform jobs similar to his previous one that required lifting, stooping, and bending. (Tr. 35.)

The plaintiff testified that he has pain and muscle spasms in his feet, hands, shoulders, and low back. (Tr. 48-50.) He explained that his "feet are flat and . . . swell a lot and then . . . get numb." (Tr. 47.) He said that he experiences numbness in his feet "[p]retty much every day" and that his feet swell approximately once a week after prolonged standing. (Tr. 47-48.) He testified that he has pain and swelling in his left knee, which pops and grinds and causes pain in his shins.

5

(Tr. 49-50.) He explained that he has problems balancing and said that he uses a cane. (Tr. 50-51.) He testified that he has arthritic pain in his shoulder and elbow joints and that he has trouble raising his arms above chest level. (Tr. 44, 48-49.) He described his back pain as a "sharp," "shoot[ing]" pain. (Tr. 49.)

The plaintiff estimated that he can sit for 10-15 minutes and stand for 10-20 minutes before needing to change positions. (Tr. 41-42.) He said that he can walk for 15-20 minutes at a time and can lift a gallon of milk "on a good day." (Tr. 42.) He testified that he takes Tramadol and Hydrocodone for pain and that he has tried stretching but that it "increased the pain." (Tr. 43, 45.) He said that his medications give him headaches, diarrhea, stomach problems, and dry eyes and make him "drowsy, dizzy, sleepy, [and] delirious." (Tr. 40, 44, 51.)

He related that he can "do a little" dusting and vacuuming but cannot wash the dishes because he cannot "stand at the sink that long." (Tr. 45.) He explained that he can put laundry "in a washer" but that he cannot move the laundry to the dryer when it is wet because it is too heavy and hurts his shoulders. *Id.* He said that he goes grocery shopping with a companion and that he does not do any outside chores such as mowing. (Tr. 45-46.) He added that he is able to drive "sometimes" but that other times he cannot drive due to muscle spasms and cramps in his feet. (Tr. 37-38.) He said that he reads as a hobby and attends church. (Tr. 39.) He explained that the church service is an hour and a half long and that sometimes he needs to leave early because he cannot sit that long. *Id.*

The VE testified that her testimony was consistent with the Dictionary of Occupational Titles ("DOT") and classified the plaintiff's past job as a material handler as medium, semi-skilled work. (Tr. 52, 54.) The ALJ asked the VE whether a hypothetical person with the plaintiff's age, education, and work experience would be able to obtain work if he could lift or carry twenty pounds

6

occasionally and ten pounds frequently; sit, stand, or walk six hours each in an eight-hour workday; frequently balance; and occasionally perform all other postural activities. (Tr. 52-53.) The VE replied that such a person could not perform the plaintiff's past relevant work but could work as an inspector of electrical equipment, an assembler, or a sorter. (Tr. 53.)

Next, the ALJ asked whether the person in the previous hypothetical question would be able to work if he also needed to rest on occasion outside of usual breaks due to pain. (Tr. 53-54.) The VE replied that such an additional limitation would preclude most work. (Tr. 54.) In response to questioning by the plaintiff's attorney, the VE testified that a person who would be absent three days of work per month would typically not be able to maintain employment. (Tr. 54-55.)

### III. THE ALJ'S FINDINGS

The ALJ issued an unfavorable ruling on July 18, 2012. (Tr. 12-22.) Based upon the record, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2013.

2. The claimant has not engaged in substantial gainful activity since September 16, 2009, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: obesity; degenerative joint disease of the left knee; mild degenerative disc disease of the lumbar spine; and tendinopathy and degenerative joint disease of the bilateral shoulders (20 CFR 404.1520(c) and 416.920(c)).

***

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

7

>                                    ***
>
> 5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) that is limited to lifting and/or carrying twenty pounds occasionally and ten pounds frequently; sitting, standing or walking a total of six hours each during an eight-hour workday; frequent balancing; and occasional climbing, stooping, kneeling, crouching, and crawling.
>
>                                    ***
>
> 6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
>                                    ***
>
> 7.  The claimant was born on April 19, 1959 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).
>
> 8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).
>
> 9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the regional and national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).
>
>                                    ***
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from September 16, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 14-22.)

## IV. DISCUSSION

### A. Standard of Review

The determination of disability under the Act is an administrative decision, and the only questions before this Court are whether the decision of the Commissioner is supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching her conclusion. 42 U.S.C. § 405(g). *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420 (1971) (adopting and defining substantial evidence standard in context of Social Security cases); *Kyle v. Comm'r Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010). The Commissioner's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakely v. Comm'r of Soc. Sec.,* 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 477 (6th Cir. 2003); *Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 389-90 (6th Cir. 1999). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206 (1938)); *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007); *Le Master v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially similar to that in *Richardson*).

A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See, e.g., Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record as a whole is without substantial evidence to

9

support the ALJ's determination. 42 U.S.C. § 405(g). *See, e.g., Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

The Commissioner must employ a five-step evaluation process in determining the issue of disability. *See, e.g., Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (citing *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)). The original burden of establishing disability is on the plaintiff, and impairments must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. § 1382c(a)(3)(D); 20 C.F.R. §§ 404.1512(a), (c), 404.1513(d). First, the plaintiff must show that he is not engaged in "substantial gainful activity" at the time he seeks disability benefits. *Id.* (citing 20 C.F.R. §§ 404.1520(b), 416.920(b)); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). A plaintiff who is performing substantial gainful activity is not disabled no matter how severe the plaintiff's medical condition may be. *See, e.g., Dinkel v. Sec'y of Health & Human Servs.*, 910 F.2d 315, 318 (6th Cir. 1990).

Second, the plaintiff must show that he suffers from a severe impairment that meets the twelve month durational requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Edwards v. Comm'r of Soc. Sec.*, 113 Fed. Appx. 83, 85 (6th Cir. 2004). A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." *Barnhart v. Thomas*, 540 U.S. 20, 24, 124 S. Ct. 376 (2003) (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). Basic work activities are "the abilities and aptitudes necessary to do most jobs," such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; [c]apacities for seeing, hearing, and speaking; [u]nderstanding, carrying out, and remembering simple instructions; [u]se of judgment; [r]esponding appropriately to supervision, co-workers and usual work situations; and [d]ealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b). The Commissioner is

required to consider the combined effects of impairments that individually are not severe but cumulatively may constitute a severe impairment. 42 U.S.C. § 423(d)(2)(B); *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir. 1988).

Third, if the plaintiff is not engaging in substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, the plaintiff is presumed disabled without further inquiry, regardless of age, education or work experience. *Id.* (citing 20 C.F.R. §§ 404.1520(d), 416.920(d)). The plaintiff may establish that he meets or equals a listed impairment, and that the impairment has lasted or is expected to last for at least twelve months or result in death. *See Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 350 (6th Cir. 1988). The plaintiff is not required to show the existence of a listed impairment in order to be found disabled, but such a showing results in an automatic finding of disability. *See Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989).

Fourth, if the plaintiff's impairment does not prevent him from doing his past relevant work, he is not disabled. *Id.* The plaintiff has the burden of proving inability to perform past relevant work, or proving that a particular past job should not be considered relevant. *Cruse*, 502 F.3d at 539; *Jones*, 336 F.3d at 474 ("Through step four, the [plaintiff] bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work"); *Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 109 (6th Cir. 1989). If the plaintiff fails to carry this burden, he must be denied disability benefits.

Once the plaintiff establishes a *prima facie* case that he is unable to perform his past relevant employment, the burden of production shifts in step five to the Commissioner to show that the

plaintiff can perform other substantial gainful employment and that such employment exists in significant numbers in the national economy. 20 C.F.R. § 404.1512(g); 68 Fed. Reg. 51153, 51154-55 (Aug. 6, 2003). *See also Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997)). To rebut a *prima facie* case, the Commissioner must come forward with proof of the existence of other jobs a plaintiff can perform. *Longworth*, 402 F.3d at 595. *See also Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S. Ct. 2428 (1983) (upholding the validity of the medical-vocational guidelines grid as a means for the Commissioner of carrying his burden under appropriate circumstances). It remains the plaintiff's burden to prove the extent of his functional limitations. *Her*, 203 F.3d at 391. Even if the plaintiff's impairment does prevent him from doing his past relevant work, if other work exists in significant numbers in the national economy that the plaintiff can perform, he is not disabled. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). *See also Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028-29 (6th Cir. 1990); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88-89 (6th Cir. 1985); *Mowery v. Heckler*, 771 F.2d 966, 969-70 (6th Cir. 1985).

If the question of disability can be resolved at any point in the sequential evaluation process, the claim is not reviewed further. 20 C.F.R. § 404.1520(a)(4). *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding that resolution of a plaintiff's claim at step two of the evaluative process is appropriate in some circumstances).

**B. The Five-Step Inquiry**

In this case, the ALJ resolved the plaintiff's claim at step five of the five-step process. At step one, the ALJ found that the plaintiff had not engaged in substantial gainful activity since his alleged disability onset date. (Tr. 14.) At step two, the ALJ determined that the plaintiff had the following severe impairments: "obesity; degenerative joint disease of the left knee; mild degenerative disc disease of the lumbar spine; and tendinopathy and degenerative joint disease of the bilateral shoulders." *Id.* At step three, the ALJ found that the plaintiff's impairments, either singly or in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 14-15.) At step four, the ALJ determined that the plaintiff was unable to perform his past relevant work. (Tr. 20.) At step five, the ALJ found that the plaintiff could perform the representative jobs of inspector-electrical, assembler, and sorter. (Tr. 21-22.)

**C. The Plaintiff's Assertion of Error**

The plaintiff argues that the ALJ erred by failing to properly consider the fact that he was awarded disability benefits by the VA.[4] Docket Entry No. 12-1, at 9-10. Notations in the medical record indicate that the VA awarded the plaintiff service-connected disability benefits due to physical impairments including limited arm motion, flat foot condition, and traumatic arthritis.[5] (Tr. 366,

---

[4] The plaintiff also argues that the ALJ erred by (1) failing to properly evaluate the C&P examinations performed by Ms. Robinson; (2) failing to include certain limitations in the plaintiff's RFC; and (3) failing to properly consider side effects from the plaintiff's medications. Docket Entry No. 12-1, at 10-17. Given the Court's decision herein that the ALJ failed to properly consider the VA's disability determination, the Court finds it unnecessary to address the plaintiff's other issues.

[5] The VA's actual decision is not in the record; however, at several points in the VA's medical records, the plaintiff's service-connected rated disabilities are listed.

13

378.) However, in her decision, the ALJ did not discuss the VA's disability ratings or award of benefits.

Because the standards used by the VA are different than those used by the Social Security Administration ("SSA"), the VA's decisions regarding whether a person is disabled are not binding on the SSA. *See* 20 C.F.R. § 404.1504 (noting that a disability determination made by another governmental agency is based on its rules and is not binding on the SSA). *See also* Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *6-7. However, the SSA cannot ignore another agency's decision and must consider it when making its own disability determination. *Id*. ("[E]vidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered."). *See also LaRiccia v. Comm'r of Soc. Sec.*, 549 Fed. Appx. 377, 387-88 (6th Cir. Dec. 13, 2013).

The Sixth Circuit has "held that a disability rating from the [VA] is entitled to consideration, but . . . [has] not specified the weight such a determination should carry when determining social security disability eligibility." *Ritchie v. Comm'r of Soc. Sec.*, 540 Fed. Appx. 508, 510 (6th Cir. Oct. 3, 2013) (citing *Stewart v. Heckler*, 730 F.2d 1065 (6th Cir. 1984)). However, regardless of the weight afforded, the ALJ "should explain the consideration given to these decisions in the notice of decision." *LaRiccia*, 549 Fed. Appx. at 387 (quoting Soc. Sec. Rul. 06-03p). *See also* Report and Recommendation entered in *Shumaker v. Comm'r of Soc. Sec.*, 2013 WL 441060, at *15 (N.D. Ohio Jan. 15, 2013) and adopted by the Court (collecting Sixth Circuit district court cases in which the court "required the ALJ to assign 'some weight to the VA's decision and articulate his or her reasons for finding such.'"). Thus, although the ALJ is not required to give great weight to the VA's disability finding, she should "adequately explain the valid reasons for not doing so." *King v.*

14

*Comm'r of Soc. Sec.*, 779 F. Supp. 2d 721, 726 (E.D. Mich. Mar. 28, 2011) (quoting *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001)) (noting that "the relative weight to be given [to VA] evidence will vary depending upon the factual circumstances of each case"). *See also LaRiccia*, 549 Fed. Appx. at 388 (quoting Soc. Sec. Rul. 06-03p). Accordingly, courts have routinely remanded cases in which the ALJ failed to properly weigh a governmental or nongovernmental agency's disability decision or failed to articulate valid reasons for rejecting the decision. *See, e.g., LaRiccia*, 549 Fed. Appx. at 388; *King*, 779 F. Supp. 2d at 726; *Wilmore v. Comm'r of Soc. Sec.*, 2014 WL 320072, at *3-4 (E.D. Mich. Jan. 29, 2014). *See also* Reports and Recommendations entered and adopted in *Dellerman v. Comm'r of Soc. Sec.*, 2014 WL 3734393, at *4-5 (S.D. Ohio July 28, 2014); *McPhee v. Comm'r of Soc. Sec.*, 2013 WL 3224420, at *13-14 (E.D. Mich. June 25, 2013); and *Lowery v. Comm'r of Soc. Sec.*, 886 F. Supp. 2d 700, 718 (S.D. Ohio 2012).

In this case, there is no indication in the ALJ's decision that she considered the VA's disability determination at all. As the defendant points out, the ALJ considered the medical records from the VA pertaining to the plaintiff's underlying medical conditions. Docket Entry No. 13, at 13; (tr. 17-20). However, the ALJ did not specifically consider the VA's disability ratings or the VA's conclusion that the plaintiff's impairments resulted in disability. As a result, the ALJ's decision lacks clearly articulated reasons for why her disability determination differs from the VA's decision. The ALJ was not required to accept the VA's decision as her own; however, she was required to meaningfully consider the VA's decision and explain whether she was giving any weight to the decision and the reasons for that weight. *See Lowery*, 886 F. Supp. 2d at 718 ("Although the ALJ was not bound by [the VA's] finding, [s]he was required to consider the [VA's] finding and articulate one or more reasons for rejecting that finding.").

In arguing against remand, the defendant acknowledges that "the ALJ should have articulated the weight given to the VA disability rating" but argues that the ALJ's failure to do so was harmless error. Docket Entry No. 13, at 14. The defendant maintains that the VA's decision "[does] not necessarily contradict the ALJ's findings, nor accurately represent [the] [p]laintiff's actual functional limitations." *Id.* Interpreting the VA's decision and according it appropriate weight are tasks within the ALJ's purview. It is the ALJ's role and not the Court's to decide the factual issues at hand and to adequately explain the basis for her decision in order to facilitate appellate review. *See Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985) ("It is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review."). The defendant's argument would place the Court in the ALJ's role of weighing the evidence and determining the credibility and meaning of the evidence.

The defendant also argues that remand "would be an undue waste of administrative and judicial resources." Docket Entry No. 13, at 14. However, the defendant presupposes that the ALJ's decision on remand will be the same. Given the ALJ's failure to consider the VA's disability determination, the Court cannot be so certain. Consequently, the Court concludes that remand is appropriate in this case. Upon remand, the ALJ should be required to consider the VA's disability determination and explain the consideration given to the decision in accordance with the authorities cited above.

## IV. RECOMMENDATION

For the above stated reasons it is recommended that the plaintiff's motion for judgment on the administrative record (Docket Entry No. 12) be GRANTED to the extent that the case should be REMANDED in order for the ALJ to explain the consideration given to the VA's disability determination.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation, and must state with particularity the specific portions of this Report and Recommendation to which the objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully Submitted,

JULIET GRIFFIN
United States Magistrate Judge